Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

# UNITED STATES DISTRICT COURT

### for the

CENTRAL District of CALIFORNIA

SOUTHERN Division



FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

JUL 29 2022

CENTRAL DISTRICT OF CALIFORNIA
BY     DTA          DEPUTY

No.
CV30
N/S

GAR MYERS

_____
*Plaintiff(s)*
(Write the full name of each plaintiff who is filing this complaint.
If the names of all the plaintiffs cannot fit in the space above,
please write "see attached" in the space and attach an additional
page with the full list of names.)

-v-

WILLIAM POTTER ET AL

"SEE ATTACHED"
_____
*Defendant(s)*
(Write the full name of each defendant who is being sued. If the
names of all the defendants cannot fit in the space above, please
write "see attached" in the space and attach an additional page
with the full list of names. Do not include addresses here.)

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 8:22cv1410-VBF-PVC
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ☑Yes ☐No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS; FRAUD; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Non-Prisoner Complaint)

---

**NOTICE**

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name            GAR MYERS
Address         17602 17TH ST #102-235
                TUSTIN        CA        92780
                *City*        *State*   *Zip Code*
County          ORANGE
Telephone Number 714-914-5511
E-Mail Address   GM4REAL.33@GMAIL.COM

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1
Name            (CIVIL RIGHTS) (COLOR OF LAW) WILLIAM POTTER
Job or Title *(if known)*  FORMER GUARDIANSHIP JUDGE LAS VEGAS
Address
                ?           NV          ?
                *City*      *State*     *Zip Code*
County          CLARK
Telephone Number N/A
E-Mail Address *(if known)* N/A
                ☑ Individual capacity   ☑ Official capacity

Defendant No. 2
Name            (CIVIL RIGHTS) (COLOR OF LAW) BRIAN REEVE
Job or Title *(if known)*  ASSISTANT CITY ATTORNEY HENDERSON NV
Address         ? GATESBRIDGE
                HENDERSON    NV          ?
                *City*       *State*     *Zip Code*
County          CLARK
Telephone Number
E-Mail Address *(if known)*
                ☑ Individual capacity   ☑ Official capacity

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

Defendant No. 3

    Name         KRYSTAL REEVE

    Job or Title *(if known)*

    Address        2  GATESBRIDGE

                HENDERSON     NV     ?
                          *City*         *State*       *Zip Code*

    County        CLARK

    Telephone Number

    E-Mail Address *(if known)*

    [✓] Individual capacity    [ ] Official capacity

Defendant No. 4

    Name         ALBETH FREEBAIRN

    Job or Title *(if known)*

    Address        2  GATESBRIDGE

                HENDERSON     NV     ?
                          *City*         *State*       *Zip Code*

    County        CLARK

    Telephone Number

    E-Mail Address *(if known)*

(SEE ADDITIONAL PAGES)

    [✓] Individual capacity    [ ] Official capacity

## II. Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

     [ ] Federal officials (a *Bivens* claim)

     [✓] State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

SECTION 242 OF TITLE 18 (SEE KEENES v STONE | 84 F.3d 1124 |
TITLE IV OF CIVIL RIGHTS ACT OF 1964 (RELIGION) 9th CIR.)

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## IV.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

SEE ATTACHED "DAMAGE/INJURES & RELIEF "

## V.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

SEE ATTACHED "DAMAGES/INJURES + RELIEF

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.   For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:        7-29-2022

Signature of Plaintiff

Printed Name of Plaintiff        GAR MYERS

### B.   For Attorneys

Date of signing:        _____

Signature of Attorney        _____

Printed Name of Attorney        _____

Bar Number        _____

Name of Law Firm        _____

Address        _____

        _____

        *City*          *State*          *Zip Code*

Telephone Number        _____

E-mail Address        _____

## ADDITIONAL DEFENDANTS
### (Address and Phone Info will be provided later)

Defendant #5 -  Robert Hales  Orange County, Ca  (Color of Law)
"    "      #6 – Tonya Billings  Orange County, Ca
       "      #7 – Mark Billings   Orange County, Ca "

       #8 -  Deputy Wilhite  Orange County, Ca  (Color of Law)
       #9 -  Peter Montez (OCDA Investigator)  OC  (Color of Law)
       #10 – John Doe Deputy Sheriff  OC (Color of Law)
       #11– County of Orange (OC Adult Protective Services)
       #12 – Jay Larsen   Henderson Nevada  (Color of Law)
       #13 – Samuel Warren   Henderson Nevada  (Color of Law)
       #14 -  Jason Aiyaz   Henderson Nevada  (Color of Law)
       #15 – Dawn Throne   Henderson Nevada (Color of Law)
       #16 – Stephan George   Henderson Nevada (Color of Law)
       #17 – City of Henderson  Nevada
       #18 – Shauna Vanderlinden   Utah
       #19 – Gerry Vanderlinden   Utah
       #20 – Neurology Center of Nevada
       #21 – Dignity Health
       #22 – Church of Jesus Christ of Latter Day Saints (Cal & NV)
       #23 – 100 -  John Doe's  (to be named later)

## STATEMENT OF CLAIM

The color of law civil rights violations originated in Nevada starting on or around April 2020 and continued in Nevada on or around May 5, 2020, May 12, 2020, May 19, 2020,  May 22, 2020 and continued in Nevada throught July 29, 2020.

The color of law civil rights violations commenced in California on May 22, 2020 and continued through December  2020 to March 2021 and continued until on around around October 2021.  On or around February – Aprril 2022.

The after the fact color of law civil rights violations constituted a conspiracy to protect and conceal an estate and trust circumvention and hijacking that originally involved two of the color of law defendant's in Nevada and in California the violations represented conspiracy after the fact to retaliate against and oppress Plaintiff  by failure to perform lawful duties and protect because Plaintiff poses a threat to expose a multi-orange county et al crime lab fraud centered color of law conspiracy, which for safety and evidence protection reasons was a subordinate reason for Plaintiff agreeing to move to Nevada tto resume care giving services at their request.


### Allegations of Fact

Plaintiff's father, Darrold Myers (then 86) , lived in Orange County, Ca with his wife of 50 years Lilah Myers (then 84). Both were elderly and in need of part time care giving/assisted living that Plaintiff had provided for approximately a decade before Darrold moved himself and Lilah to Henderson Nevada in February 2018.

The primary reason for the Myers' move to Nevada was to get away from Tonya and Mark Billings and their flying monkey fellow religionists that had caused Darrold distress, underrmined his household and relationship with his wife, and soiled my father's good name at his local Mormon church with a smear campaign.  The latterr followed a series of exploitations by the Billings.

After the  Myers move to Henderson Nevada the Billings recruited Lilah's sister Ardith Freebairn and her son in law and daugher, Brian and Krystal Reeve, (Henderson based Mormons) to continue the elder abuse in Nevada.  Billings knew tthat Freebairn held a grudge against Darrold for Ardith cancelling a previously planned 2013  move to Nevada after Ardith (a punished IRS tax cheat) usurped and took over control of his wife, Lilah, and their financial business thus making the move undoable.  Darrold complained of elder abuse against him in Nevada by Ardith Freebairn in  2018 in conjunction with Tonya and Mark Billings and also Shauna Vanderlinden.  Darrold banned Tonya Billings from staying overnight in his Henderson home when Tonya visited.  Tonya Billings resented being banned.  Plaintiff travelled frequently to and from Nevada from his Californiar residence to help deter abuse and allieviate Darrold's distress while assisting his elderly parents.

1

In October 2018 Plaintiff moved to Henderson Nevada to stop the elder abuse and resume care giving services for his elderly parents per their repeated requests.  Part of the inducement by Darrold was that he didn't feel Plaintiff was then safe in California and Darrold believed Plaintiff should store and thus safeguard his troves of evidence of an OC crime lab fraud centered conspiracy involving former California Attorney General Kamala Harris at his parents Henderson home.

Darrold died of complications of a stroke on January 5, 2019.

Prior to Darrold's death, while he lay physically incapacitated in a local hospital, the Billings and their co-conspirators Brian (Assistant City Attorney of Henderson) & Krystal Reeve and their live in mother Ardith Freebairn hatched a scheme to unlawfully remedy what  they considered an adverse trust/will defect  that was not favorable to Lilah Myers nor themselves indirectly.   Brian Reeves started orchaestrating and executing an estate and Myers Family Trust circumvention and hijacking.  Reeve's instructed his live in mother in law Ardith Freebairn on behalf of the Reeve, Billings  and Vanderlindens al to unlawfully remove all of Darrold's personal financial documents, records and other Myers Family Trust materials from Darrold  home office without his knowledge and permission while Darrold lay, still with mental capacity, in the Henderson based hospital in ICU.

Plaintiff reported his discovery of the unlawful personal property removal acts to Darrold and Darrold instructed Plaintiff to retrieve the records and documents and put locks on his home office door.  The documents and records theft  occurred after Reeve had violated his employment agreement by legally reviewing the Myers Famly Trust that Ardith  Freebairn had secreted out of Darrold's home office at  his behest.  Freebairn brought the trust to Reeve for what she and Reeve knew was a prohibited legal review and legal advice days prior.

It was from this prohibited and unlawful legal review by Reeve as a favor to the Mormon church (similarr to Mormon church referring Myers to Robert Hales for trust creation) that Reeve's concluded that the original Mormon trust creation attorney and Darrold had conspired 27 years prior to deceptively draft against Lilah Myers' interests.  Reeve believed, according to his mother in law Ardith Freebairn and wife Krystal Reeve, that the reason the Myers Family Trust remained unamended for 27 years prior was to keep Lilah in the dark and prevent her from discovering the defect and amending the trust to ensure she got 100% of Darrold's inheritance.

Reeve et al knew or believed that Lilah would be left an incapacitated and incompetent trustee upon Darrold's anticipated death because Darrold and Lilah had not properly updated and amended their trust to reflect present reality, relationship and circumstances.  They schemed to exploit Lilah's incompetence, grief and inability to say " no" and resist others as a people pleaser in order to circumvent the trust and hijack it to Lilah's and their personal advantage and to do so against  Lilah's non-Mormon step children and plaintiff son.  They did so by subrosa

means after Darrold's January 5, 2019 death that required that Reeve, Billings, et al feign Lilah's competency as a trustee and prevent Lilah from being declared mentally incapacitated such as to be properly removed as an incompetent and unwilling trustee.

Reeve's et al employed multiple frauds to advanced their illicit scheme while refusing to return Darrold records to his home office after his death dspite Plaintiff asserting his California power of attorney on Lilah's behalf to demand they return  Darrold's and the family's records.  Reeve's like Larsen falsely claimed a California power of attorney was invalid in Nevada. This was fraudulent.

Reeve's used his government position, influence and legal and religious allies/network in Henderson Nevada and the Harry Reid "Mormon Mafia" to subrosa recruit Lilah's attorney Jay Larsen and Plaintiff's intial guardiansnhip attorney's to protect Reeve and the City of Henderson et al to violate Lilah and Plaintifs civil rights, including their U.S.C. Intangible right to honest legal services. Plaintiff's used his California power of attorney that Larsen relied upon to meet with Larsen and notify him on Lilah's behalf of the elder abuse, documents theft and evidence of foul playby the Reeve' s and Freebairn.  Larsen had promised Plaintiff he would send the Reeve's and  Ardith a ceise and desist letter and demand they return Darrold's property to the trust's Henderson home from which they took them immediately.   Larsen instead subrosa spoke with Brian Reeve's and the Mormon church that has disporportionate conrol and influence in all affairs in Henderson Nevada and feigned his soon to be elder client Lilah was competent and not incapacitated,.  H misrepresented to Plainttiff the California Powers of Attorney were not valid in Nevada.  The Mormon church knew that  only a competent Lilah would continue paying titthing and feared the  named successor trustee  Janet LaGuire and the named durable power of attorney non-Mormon to act in Lilah's stead upon incapacity would not likely pay tithing.  He did this for the primary purpose of protecting his undisclosed legal and religious peers and network member Brian Reeve and his fanily and the City of Henderson Nevada  and Mormon church interests.  Larsen ultimately advanced after the fact the Reeve masterminded estate and trust hijacking of Lilah Myers and the Myers Family Trust.

Plainiff notified the Mormon church personally and in writing of it's members conspiratorial fraud via undue influence and manipulation of an incapable elder Momon widow  trustee and requested church intervention and relief.   The Mormon church has an ecclesiastic court system to address such matters.  Ardiht Freebairn, Krystal Reeve and Lilah informed me  that the church in fact did speak with Ardith and Brian Reeve in or around March 2019 telling them to stop controlling Lilah.  This seemingly good news was contradicted by the escelarated Mormon member conspiratorial effort to protect and advanced the conspiratorial elder abuse fraud to the church's advantage.  Later after the Mormon's kidnapped Lilah and took her to California the Mormon church was notified and evaded it's duty to confront the situatiuon and use it's church court system to endeavor to stop the elder abuse and destruction of the Myers family and it's dogs. Local church authorities in identified the church has a conflict of interest regarding Lilah's kidnapping and isolation and as such would not mobilitze the church court  system to

3

protect it's elder member and my deceased Mormon father's family and estate, not the trust that the same local church procured Robert Hales to create the Myers Family Trust for Darrold and Lilah Myers decades prior.

Jason Aiyaz, defendant, (also a Mormon) illegally represented Plaintiff as a guardianship after declining to sign a retainer agreement.  Aiyaz said  he would represent me for free on behalf of the Mormon church and due to my friendship with former Vegas Sheriff and SWAT commander Larry Burns (Mormon).  Aiyaz in fact represented me so he could protect Reeve and Larsen et al which got caught up in a serious fraud conspiracy.   Helped advance and ensure the estate and Trust hijacking was the best way to protect Reeve's et al.   *(Reeve, Larsen and Aiyaz were all part of Mormon Senator Harry Reid's "Mormon Mafia" network that Reeve's admittedly is a member of and Reid caused Reeve to be hired as Assistant City Attorney of Henderson Nevada).*

On or around March 2019 Lilah's already physical and mental incapacity were worsened by grief and depression related to the recent of her 50 year husband Darrold on January 5, 2019. Lilah's primary care doctor urgently referred Lilah to the Neurology Center of Nevada for testing and evaluation of likely "dementia."

Plaintiff also found guardianship attorney Aiyaz at his time.  Aiyaz committed malpractice in a number of ways to delay, obstruct and defeat Plaintiff's efforts to commence a guardianship proceeding until after Reeve's et al estate and trust hijacking scheme via elder exploitation and abuse was successful. Aiyaz contacted Dignity Health and caused them to lie about their needing to subordinate Lilah's doctor's certificate of incapacity needed to commence a guardianship until a neurologist first signed a mental  incapacity certificate.  This was fraudulent.

Plaintiff's mother Lilah had previously complained to Plaintiff of being manipulated and pressured to go along with what she knew was an unlawful scheme being done in her trustee name by Reeve's et al but confessed to Plaintiff that she was incapable of saying no to Reeve's Billings et al who insisted to Lilah she had a moral right to undue what her deceased husband had purportedly done. Reeve's et al scapegoated and smeared  to Lilah and Plaintiff Darrold's character and totally exonerated the Mormon trust attorney whom had actually drafted the trusta nd wills and told Darrold his actions were lawful.  Reeve's et al believed they were not but scapegoated the dead which could not defend himself.  This cruelty to Darrold's widow and his closest son Plaintiff caused great pain and distress.

On or around Septembe 4, 2019 Lilah Myers unilaterally and spontaneously complained to Plaintiff care give son (also co-trustee/beneficiary) that she had recently been forced to sign a bunch of documents that she did not want to sign and could not read.   Reeve's et al's illiicit actions to advance their scheme had resulted in Lilah needlessly becoming legally blind before this blind signing took place.  Further her dishonest attorney Jay Larsen, that was a legal network and religious peer and friend of Brian Reeve's, knew Lilah was incompetent and largely

4

mentally incapacitated as he was informed  that Lilah had been urgntly referred to Neurology for testing and  evaluation for dementia long before the trust hijacking signing Larsen oversaw on August 16, 2019 occurred.  Larsen not only fail o gt his client nurologically ested an iagnosed befor the signings but admitted in email to Plainitiff only days after what later proved to be trust circumvention and hijacking signings on August 16, 2019 that his elderly client did not understand what a power of attorney was nor her own estate plan such as to intelligently sign such a document.  Larsen and Reeve et al co-conspirator Shauna Vanderlinden (on Reeve and Larsen's et al's behalf ) tried to abort Lilah's annual medicare exam on October 8, 2019 knowing it contained miincognition testing.  Vanderlinden, like Larsen, Reeve, et al, all knew or believed Lilah could not pass the neurological tests.. Lilah's doctor ignored Vanderlinden's suspicious abortion attempt and Lilah catastropically failed the federally administered minicognition exam.

This fail catastrophic mini cognition test fail contradicted a falsified and anomolous neurology input non doctor administered MMSE score that Reeve, Larsen et al per their network caused to be falsified contrary to Planitiff's direct witness of the MMSE intake test, all other of Lilah's medical history and facts, evidence and witness testimony before and after the MMSE intake evaluation.  Lilah's two neurolgoists and a retired police officer and attorney's investigator officially believed that Lilah had "Alzheimer's Disease, Dementia, or some other neurocognitive disorder."  Larsen would later perpetrate a fraud on the guardianship court, along with the  judge, feigning that Larsen's submission of his sworn belief his elderly client was competent to sign away her trust was based upon the falsified MMSE non-doctor administered score was legitimate even after the Judge and Larsen had all of Lilah's medical records before them showing Lilah was likely mentally incapable and needed treatment. Vandelinden told Lilah's doctor on October 8, 2019 that Lilah "does not understand the things which she is signing."  Again this was only days after she and the Billings per Larsen et al procured  new trust authorities, including powers of  attorney, from Lilah and cut Lilah's stp children out of her will and disenfranchised them in the new trust by signature  coercion, force, pressure and manipulation that Lilah complained to her Plaintiff son about.   The Mormon church and Harry Reid's "Mormon Mafia" that Reeece was an admitted member of are the only one's influencial and above the law enough to cause an administrative record input fraud to serve as an after the fact pretext to help hijack the Myers Family Trust away from the non-Mormon Myers Family members.

Reeve et al ignored plaintiff 's efforts to find out whether any amendments to the Myers Family Trust and kept him in the dark.  Trustee Lilah was incapable of providing any reports as she didn't even know what was going on.  They all feigned that Lilah was a competent and capable trustee and it was Lilah, not them, that was violating her trustee duties and obligation to provide reports and information to co-trustee/beneficiariees, which Plaintiff was one of.  Not surprisingly Larsen and Reeve et al  acted repeatedly to delay, interfere with and prevent Lilah from being neurologically tested and evaluated and would even conspire later on May 22, 2020 to kidnap Lilah away from her Nevada home to the Billings house in California against her express will to a Nevada guardianship court in order, in part, to prevent her from getting her

5

final neuropsyche and memory testing. If they believed Lilah was competent and with mental capacity such testing would have proved their position and ended all debate and affirmed the new trustt and authorities. But they knew she would faila nd likely bedeclared incapacitated and an independent named successor trustee step in and evaluate the trust and discover they past misconducts. The named successor trustee was Jant LaGuire who was one of Lilah's non Mormon sttep children that was cut out of the will and circumvented in the trust hijacking scheme. All color of law defendant's involved to this point were Mormon.

On or around March 2020 Plaintiff discovered he had been the victim of legal malpractive and fraud from a non-Mormon lawyer at a local lawfirm. Plaintiff therefter finally got Lilah's doctor's certificate of incapcity and commenced a guardianship to protect his mother Lilah. Plaintiff's atttorney

DawnThrone, also Mormon, took my case. Most attorney's would not even though they would get paid because they recognized the powerful Mormon players involved. Throne promised to be honestt and that her Mormonism would not adversely affect her performance. Bu she had an undisclosed conflict and divided loyalty to her new client. She promised Plaintiff she would find a non-Mormon judge and seek to recuse Jay Larsen (non guardianship attorney) from representing Plaintiff's mother at guardianship for a usurous legal fee of $12,000 after he abused Lilah Myers by removing her free court appointed guardianship specialist lawyer as Lilah's counsel Larsen at Vanderlnden, Freebairn and Billings request illegally stepped into protect himself and the former, not Lilah. Throne would commit conspiratorial malpractice and fraud against Plaintiff to violate his civil rights along with Jay Larsen and the already publically disgraced (Nevada Judicial Commission convicted) and unfit Mormon Judge William Potter.

Only a couple months after the frauds on and by the Nevada court Judge Potter would commit an obscene #metoo offense against Judge Lynda Bell (presiding judge of family court in the area) and be reported back to the Nevada Judicial Commision and convicted of the #metoo offense. Potter would be forced off the bench thereafter. A double lived Mormon pervert Judge that was a raging naricissist is the non Mormon good judge Dawn Throne shopped to ensure I got a fair proceeding. Complaints were filed with the Nevada State Bar against the attorney's including Throne.

On or around May 5, 2020 Jay Larsen exploited Lilah's incapacitated and delapitated condition atAdvanced Health Care in Las Vegas to strip her of her free court appointed guardianship specialist in order to step in as Lilah's counsel and enrich himself while protecing himself from exposure for his past role in the Myers Family Trust circumvention and hijacking. During a discussion with Plaintiff Lilah demonstrated that she had no idea that Larsen stripped her of her attorney Marcus Broewers and was going to charge her any money to represent her at guardianship. Ironically it was the Mormon church's fraud and negligence that resulted in them giving Lilah and subsequently her Plaintiff care giver son Covid 19 from which Lilah nearly died and Plaintiff suffered. Reeve, Larsen et al discovered that Plaintiff was contemplating filing a lawsuit against the Mormon church and feared if Plaintiff was granted guardianship of

his mother  that he would use the assets to instigate and prosecute that lawsuit against the Mormon church.   Dawn Throne refused to seek to recuse and/or disqualify either Mormon Judge Potter nor Mormon peer attorney Jay Larsen despite solid evidence and good cause to do so.  All atttorneys' and the guardianship judge were Mormon and  the Mormon church in their minds was a primary beneficiary of any denial of guardianship to the former Mormon, or ExMormon Plaintiff. Plaintiff has never been anti-Mormon but there is a cultural default that anybody that is a ExMormon will try to harm the Mormon church, which is incorrect and in any case unsupported

On May 12, 2020 the frauds on the corut and by the court in Kimes v Stone fashion took place. Judge Potter ignored Lilah's medical reports, did not talk with  Lilah since she was incapacitated and he knew or believed that, and Throne deliberately ommitted vital facts and evidence from the hearing that were discussd with her client in detail only minutes before the guardianshiup hearing (not accidental), and Larsen contracted his representation out to a lawfirm employee named Samuel Warren, a non guardianship attorney, to keep Larsen off record related to his/their frauds on the court and prior role in elder abuse estate and trust hijacking.  Judge Potter put on a show that relied upon Lilah's express will via Mr .Warren that she did not want to be discharged and taken to the Billings in Orange County, Ca when recovered.  To the contrary Lilah wanted to be discharged to her Henderson Nevada  home to continue living with her care giver son and two dogs so as to be free to later determine her next step.  Unspoken was that Lilah and her Plaintiff son were wating on the Billings to build a promised Kasita with dog patio and dog door with agreement that Tonya Billings would take care of Lilah's dogs before Lilah would be bligated to move to the Billings.

Judge Potter strongly warned Tonya Billings and ShaunaVanderlinden to honor Lilah's wishes to be discharged and live at her Henderson Nevada home and that if they continue to try to influence her to move to the Billings and/or kidnapped her to California against Lilah's will as of that May 12, 2020 and no later theywould be in trouble with the court.  The judge prescribed remedies to Plaintiff and instructed Mr. Warren and Ms Throne to file motions for relief, report elder abuse and re-file petition for guardianship for plaintiff where he would weight heavily granting petitioner guardianship.,  Despite Potter's instructions, warnings and directives he did not issue formal orders.  Neither did Ms. Throne prepare and submit any order for the judge to sign.

On May 19. 2020 Dawn Throne illegally wishdrew as Plaintiff's counsel despite knowing Judge Potter's instructions, warnings and directives if not complied with  required her to seek remedy on her clients behalf.  Throne told the court there was no more business before the court, Jugde Potter knew  thisa was no true  and should not have granted Ms. Throne's withdrawal.  Plainttiff was caught  off guard and his lack of knowledge exploited by Ms. Thorn and the judge.

May 22, 2020  Shauna Vanderlinden and Tonya Billings as part of Reeve's et al brazenly violate Lilah's express will to the court that was binding on May 12, 2020 and no later by secretly kidnapping a non recovered Lilah out of Nevada to the Billings house in Orange County, Ca.

Vanderlinden for the first time used her illicity obtained spring power of attorney to discharge
Lilah to her Henderson home so that Tonya and Mark Billings could kidnap her across state
lines to their house instead. Lilah would laterr complain that she was drugged and didn't even
remember how she got from Nevada to the Billings.  Vanderlinden instructed Advanced Health
Care to not tell Plaintiff care giver nor anyone who discharged Lilah nor anthing at all.

Distressed Plaintiff made a missing elder police report.  Henderson police were told by
Vanderlinden that she  discharged Lilah with her springing power of attorney but she refused to
tell the police where  Lilah was nor with whom.  Vanderlinden referred to Jay Larsen her co-
conspirator.  Larsen obstructed the missing elder investigation by falsely telling police that it
was a civil matter, not a criminal kidnapping against Lilah's will.  He failed to tell police that
the court admonished him via his substitute subordinate attorney Samuel Warren to take action
to notify the court of the kidnapping and pursue remedy and report it as elder  abuse.
Henderson police ended the investigation leaving Plaintiff worried and distressed as to where
his elderrly mother was.  He contacted the OC Sheriff in California and they went to th Billings
and discovered and reported that was notified tha Lilah was laying incapacitated and passed out
on Billings living room couch as if drugged and thus they could speak with her. OC Sheriff
was told of the elements of the kidnapping crime including obstruction of Henereson police but
the Sheriff begged off saying "Take it civil, take it back to the judge and he'll order your mom
returned."  This was a violation of Lilah's and Plaintiff's civil right to be protected by police.
Her health and welfare were put at senseless and unlawful risk.  Lilah would be held isolated
and incommunicado for weeks thereafter til her memory faded Ibad memory) and held isolated
and stripped of her two beloved comfort poodles to the present date of this filing.

Plaintiff was saddled with the care of two dogs he could not afford to properly care for and
which due to the fruits of these civil rights violations, fraud and other causes of action made it
impossible for him to obtain even government funded housing nor work from May 22, 2020 to
the present.  Living in a van with two dogs makes it impossible to lawfully leave thm in a hot
van all day. Full tinme dog care is the duty and moral obligation.

Las Vegas Metro and Henderson police would, like OC Sheriff, tell Plaintiff to take the
criminal kidnapping matter back to the guardianship judge for him to enforce his prescribed
remedies that he instructed Lilah and Plaiuntiff's attorney's to pursue if the kidnapping took
place after May 12, 2020 guardianship hearing.  Plaintiff did so and filed a Contempt of Court
motion as a remedy as the judge instructed.  A Contempt of Court hearing was scheduled for
jJuly 29, 2020.

At the July 29, 2020 Contempt of Court hearing Judge William Potter whitewashed the
kidnapping by claiming that since he failed to give formal orders on May 12, 2020 in support
of his instructions, warnings and directives that therefore he could not enforce his instructions,
warnings and directives nor the related prescribed remedies for elder Lilah nor the Plaintiff.
Potter had evaded his duty to make a competency determination regarding proposed protected
person Lilah Myers at the May 12, 2020 guardianship hearing, but did rule that Lilah at least

8

had sufficient capacity to intelligently determine that her wishes to be discharged from Advanced Health Care back to her Henderson home was unalterable after May 12, 2020 on the court record. Lilah's atttorney Samuel Warren affirmed and agreed no changes to Lilah's express will after May 12, 2020 without relief of court.At the Contemp Hearing Lilah attnded by video but Potter evaded speaking with Lilah to determine his opinion of her competency leaving the matter of whether Vanderlinden, Billings and Larsen kidnapped a limited capaity elder against herr express will affirmd whille by evasion inplying that Lilah was not discharged while mentally incapacitated. As such Lilah was kidnapped based on Potter's May 12, 2020 ruling that expressly relied upon Lilah's express will via her attorney Samuel Warren to the court at  that hearing thatPotter and Warren immutably locked to that date and no later.  Worse then exploiting his failure to issue formal orders as if he had perpetrated a theatrical histrionic misdirection fraud on May 12, 2020 is the fact that because he didn't issue formal orders the Plaintiff's Contempt motion was deemed filed in error and not haard, considere or argued at all. Judge Potter than retroactively closed the open case back to May 12, 2020. Yet it wasn't closed by the very nature of the judges instructions, warnings and directives that were informal orders to Vanderlinden and the Billings and Larsen via his substitute attorney Samueal Warren.  But they were orders to be enforced none the less.  The Nevada State Bar on May 19, 2020 per letter to plaintiff communicated it deemed the case open and notified that Judge Potter had the duty to discipline the corrupt attorney's, not the State Bar.

In retrospect the nature of the judges communications, including "duper's delight laughs" at non funny important matters on May 12, 2020 and the context of  Larsen/Warren and Throne's actions/inactions and communications supports a reasonable belief in any reasonable person based on the Judge's actions and ruling later at the  July 29, 2020 Contempt Hearing indicates Potter's May 12, 2020 hearing performance was a fraud.  It was Judge Potter that let Throne be released as Plaintiff's counsel in an open case on the false basis that there was no more business before the court,  Throne knew this was false and so did Judge Potter.  Plaintiff was left without legal counsel to timely and properly address the kidnapping of Lilah and Vanderrlinden et al's contermpt of court.  Judge Potter having stripped Plaintiff of legal counsel then proceeded to whitewash and ratify Lilah's kidnapping and subsequent isolation elder abuse that commenced on May 22, 2020 and continues to the present in California.  Additionally Throne had failed to seek to recuse Larsen before the hearing knowing her Plaintiff client had filed a State Bar complaint against Larsen before the May 12, 2020 hearing.  Warren was employed by Larsen and Throne should have sought recusal of Mr. Warren based on fruit of the poisonous tree concept and conflict of interest, but Throne did not do so.  Warren failed to comply with the court's prescribed instructions to him if Lilah was kidnapped to California against her May 12, 2020 wishes and Warren never notified the court thatLilah ever spontaneously and voluntarily changed her mind to be discharged while still sick, without all her essential property and wihtout her  beloved dogs as part of a permanent life changing move.  Warren would later mak that incredible argument to the court but Judge Potter evaded the Contempt hearing so that fraud on the court  was not  allowed to be rebutted.

In undconscionable fashion as if Vanderlinden and Billings were in conspiracy with other color

of law defendent's receiving subrosa legal counsel they not only filed blatantantly perjurous and malicious sworn declaratoins with the court to attack Plaintiff in retaliation but they submitted to the court Plaintiff's California misdemeanor DUI appeal docket as proof in support of their frivlous request Plainitiff be deemed a vexatious litigant with sanctions. It was an blatants act of malice, greed and was frivolous and without any merit, and attacked the very Contempt mottion the court instructed Plaintiff and/or his counsel and Lilah's counsel to file if Lilah was kidnapped to Califonria contrary to Lilah's May 12, 2020 express wishes to the coutt that the court relied upon. More telling is that it sought not only wouldl Plaintiff's civil rights be violated in Nevada but Vandelinden and Billings appear to have been seeking to seek to get Judge Potter to make an unlawful ruilng that would protect County of Orange color of law fraud conspirators too, Given Vanderlinden and Billings past actions/inactions not presented herein yet known to Plaintiff it appears Vanderlinden and Billings have been working for a long time in conspiracy to help protect the County of Orange bad actors and per their request Vandelinden and Billings foolishly tried to get their Nevada co-coinspirator Judge Potter to make a foolish frivolous vexatious litigant ruling that would also enrich themselves. Fortunately Judge Potter would not be used like a tool for Vanderlinden and Billings like they have make a tool of Lilah Myers.

On or around July 11, 2020, right before the July 29, 2020 scheduled Contempt of Court hearing, Billings et al caused blind Lilah to sign a fraudulent change of address form for Plaintiff without his knowledge nor consent which they submitted to the U.S. postal service. The purpose of this elder abuse fraud that violated Plaintiff's rights was to get the trustee to vacate the trust's Henderson home by illusory means as part of an illegal lock out attempt on Plaintiff and Lilah's two dogs just days later. Billings et al transported Lilah back to Henderson subrosa AS IF correcting their kidnapping contempt. When in Henderrson however they used Lilah to gain access to the gated community and brought a Uhaul to retrieve not just Lilah's property but the most valueable trust assets in the home. Half went to the Vanderlinden's in their truck to their Utah home and half to the Billings in California. Vanderlinden's tried to steal away Lilah's dogs to be their dogs in Utah. Henderson police stopped the illegal lock out attempt but insisted I cooperate to allow the Billings et al, as part of Reeve's et al, to get Lilah's personal property or else I'd get on their bad side. Knowing their attorney was Brian Reeve's and seeing the criminal lengths they went as if entitled to operate above rule of good law I feared if I didn't cooperate I would face a false arrest. Henderson police did not stay to ensure only Lilah's property was taken away and as a result the trust property was stolen as well.

Worse, Henderson police concealed Lilah's presence in the car outside under the presence and control of Tonya Billings and ignored my claims that Billings et al had fraudulently discharged Lilah and kidnapped her against a Nevada guardianship court and her express will to the court. Officer Stevenson told me, like all the other police, to take it civil and back to the guardianship judge who would order Lilah returned and her property too. All police knew or should have known that Judges are absolutely immune and like Kings who can do no wrong Judges can commit wrongdoings and crimes on the bench to swallow the sins and misdeeds of others,

10

including the police officers, that fail to do their jobs to protect and property serve Lilah and Plaintiff. Thus all committed civil rights violations in addition to frauds.

Also during the illegal lock out attempt Reeves, Billints et al procured Lilah's mailbox key for purposes of commiting an act of perjury related to the Contempt of Court hearing that was approaching. Plaintiff's U.S. mail was illegally forwarded to the Billings for months and numerous attempts to stop and correct the fraudulent address change went unheeded. Billings et al multiple times changed Plaintiff's address unlawfully and made false reports of addess change to his financial creditors. This resulted in a complaints to the U.S. Postal Inspector in Nevada and Billings refused to return Plaintiff's mail that included court papers for the case in which they were Plaintiff's opposition in the Contempt of Court proceedings. Plaintiff was put on a 7 year fraud protection service as a result. Billings et al wanted the trust home vacated so they could effect a quick sell of the property and control the trust proceeds in Lilah's trustee name. Again exploiting an incompetent elderly and unwilling ttrustee widow to obtain illicit control of other people's assets.

After Judge Potter whitewashed the kidnapping after the fact to protect his fellow Mormon religious kidnappers and his fellow Mormon attorney's on July 29, 2020 plainiff continued to be held hostage to the dog care situation for Lilah's dogs in Henderson Nevada. Plaintiff could not move back to California to pursue his career or obtain affordable housing nor extreme harship and burden resume his big wave riding lifestyle and passion. He had no legal right to give Lilah's dogs away, and Lilah made clear to all Nevada court's she wanted her dogs back. Plaintiff continued to find a way to transition back to California and pursuade Lilah's kidnappers to honor an original promise hey made immediately after his father's death to care for Lilah and her two dogs in a Kasita they would build with a dog patio and dog door and side entry gate for Lilah. Billings had fraudulently induced Lilaha and Plaintiff to detrimentally rely on this fraudulent inducement before they ultimately kidnapped Lilah and stripped her of her beloved dogs forever. Lilah and her illicit power of attorney controllers together agreed that in exchange for Plaintiff voluntarily moving back to California they would buy Plaintiff a liveable Ford Transit van conservation or 5th wheel. However arranging for the dogs to be returned to Lilah and care fot by the Billings remained problematic and a barrier to Plaintiff moving back to California like he wanted to do.

A couple months later Vanderlinden on behalf of Reeve's, Billings et al hired Jay Larsen and Samuel Warren to now as non eviction attorney to file a fraudulent eviction against Plaintiff that if successful would result in Lilah's dogs and care giver son being evicted to homelessness in the cold winter desert in Nevada. They inverted the truth as if Plaintiff intended to remain in the trust home as a tenant at will. They all knew he was trying to move back to California but for the dogs and obtaining housing before he moved. Yet they painted a false picture to the eviction court that ironically exploited it's knowledge that I was eagar to move back to California. Lilah never wanted her dogs and care giver son evicted to homelessness. She also did not want her son and dogs evicted to homelessness in violation of Covid 19 pandemic federal and state moritoriums that were then in effect to protect her son and other people form

11

contracting and spreading Covid 19.   Yet Reeve's et al commenced the fraudulent eviction anyway.

Tragically another Mormon Mafia network Judge Stephan George was assigned to the case and he and the Henderson Township Court staff violated Plaintiff's rights to unlawfully and fraudulently evict Plaintiff and Lilah's dogs to homelessness during the Covid 19 pandemic. Judge George knew Lilah's competency to even hire legal counsel for this unconscionable purpose had to be determined because the guardianship Judge Potter failed to make a competency determination due to Lilah's doctor's findings tending strongly toward Lilah's presumed incompetency.  The final neuropsyche testing of Lilah was sabortaged by the very parties that used illicitly obtained power of attorney to not only kidnap Lilah but bring a fraudulent eviction in Lilah's name but also against her will just like the kidnapping.  The evicion judge was apprised of these facts but persisted to violate Plaintiff's rigths to the benefit and protectino of his fellow Mormon judge and legal peers.  Lilah did not know this eviction was done in her name.

Plaintiff and Lilah's dogs  started a move back to California in late February 2021 based on willfull failure of the eviction court to notify of a granted hearing.  This happened in arrears of the court refusing to file Plaintiff's federal eviction moritorium sworn declaration thus violating Plaintiff's rights.  Plaintiff repeatedly tried to drop Lilah's dogs off at the Billings in Orange County so Lilah could have her dogs again, but the Billings refused.  Plaintiff in desperation had reported to the Public Guardian of Orange County where Deputy Wilhite reportedly investigated.  Wilhite claimed OC courts would not take the case if Lilah was not a babbling idiot type of neurological problem.  He also said Lilah had appeared to regain limited capacity and was covering up for others so there was nothing they could do.  Wilhite acted to cause an asset freeze to be released on the basis he found no estate financial abuse at that time.   But he inferred that Lilah  had not been abused in anyway which was mislreading to the point of appearance of conspiratoial malice.

Regardless Billings knew Lilah wantesd her dogs  and for them to care for them since she was prevented from returning to her Henderson home by the Billings.  Deputy Wilfhite knew Lilah was being isolated and denied her two dogs, yet he failed to act to stop that elder abuse despite promises that he would do so in February 2021 and later.

Finally in or aronnd April 2021 the Billings banned Plaintiff from their property to stop him from trying to give Lilah her dogs back and did so in retaliation for reporting he Billings abuse to OC Adult Protective Services.  There was no animosity or the like manifest when plaintiff went to the Billings before his reports to Adult Protective Services,   This also served to isolate Lilah further from Plaintiff and endeavor to permanently rid Lilah of her dogs.  This was all distressing to Plaintiff.

Billings never got Lilah neurologically final diagnosed or cared for after they kidnapped her thus risking her health and wellbeing.  Later in or around June 2022 Billings both got Covid 19

and failed to get Lilah tested for a week until Plaintiff found out and pressured them. They claim she evntually tested negative. But then took no measures to separate Lilah from their care unttil they both tested negative for Covid 19. Yet the pretext for their isolation of Lilah from taking her to church meetings as Lilah wanted was they, despite masks and distance measures by the church, Lilah might contract Covid 19. They wouldn't let Lilah go to the dog park with Plaintiff to play with her dogs and enjoy them either as if she might catch Covid 19. Billings and their flying monkey Mormon cohorts were always near Lilah to ensure she could never freely speak about her kidnapping or the trust hijacking, etc. Again this was and is distressing to Plaintiff for good reason.

Because of having Lilah's dogs and the Billings refusing to care for them for Lilah Plaintiff could not get housed nor employed and suffered great deprivation, harm, loss and suffering. Plaintiff did interview and got a job offer on contingency that he could finally resolve the dog matter. The Billings rfused to receive and care for Lilah's dogs despite knowing Plaintiff would lose his job. Plaintiff could not legally nor morally give away or abandoned Lilah's co-owned dogs that were so important to Lilah and also to Plainitff. Plaintiff's employable value was at least $60,000 per year.

On or Around May 6, 2021 Plaintiff was homeless in a park and Mr B was accused of biting a City of Tustin employee. Finding out Plaintiff was homeless living in a van with Lilah's two dogs they confiscated both dogs with intent to return them to Lilah at the Billings. The Billings having Lilah isolated, Plaintiff could not get ahold of his co-owner Lilah to write a sworn statement that the dogs were also Plaiutiff's in light of all the aforementioned happening. As a result timely release the dogs to quarantine at Plainitff's friend's house was prevented. Plaintiff was ultimately required to pay his last $1,000 to secure release of Lilah and his dogs from OC Animal Control. Lilah however was still sole owner because the Billings failed to add Plainiff's name to the micro chip to reflect his co-ownership status that was triggered when the Billings banned him from their property in or around April 2021. In self serving response the Billings siezed upon the moment to force Lilah to blindly sign a materially false and perjurous sworn statement as a condition of freeing up Lilah and Gar's dogs. That May 12, 2021 perjurous statement was intended to once and for all rid Lilah or her two beloved dogs and of any and all liability and responsibility for them. However contrary to the sworn statement Lilah would continue to provide financial support for her dogs and veternarian care under her name and Billings and Vanderlinden knew about this and authorized the payments on behalf of what they always knew were Lilah's co-owned dogs. It appears that manipulating 88 year old incompetent incapacitated elder's to sign perjurious sworn statements for submission to government agencies is ok in Orange County.

In early September 2021 Billings et al having known Lillah never voluntarily moved from Nevada to California on May 22, 2020 also appear to have misrepresented Lilah's residency as still being in Nevada at the Henderson home as part of a tax fraud scheme without Lilah's competent knowledge or awareness. Also leaving Lilah as if still a Nevada resient until they subrosa and without Lilah's knowledge sold the Henderson home out from underneath her so

they could reduce tax liability.  The Henderson Nevada trust home sold for $480,000.  Lilah controls and does not manage any of the home sale proceeds.  At Stanley Health Care in Westminister in September 2021 Lilah had her first chance to freely, without her kidnapper isolator's nearby intimidating her, speak to an outside disinterested and credible party.  On two different visits Lilah spontaneously and freely complained to California Fraud Adjudicator Jackie Shih that the Billings had been isolating her against her will from her son, dogs and eldest daughter and other activities she wanted to do.  Lilah also complainted she has wanted to move back to her Henderson Nevada home but learned days prior that her Nevada home from which she was taken away frpm was sold out from underneath her without her awareness.  Ms. Shih reported this to the OC Adult Protectivce Services.  OC Counsel on Agings also filed a similar report, Janet LaGuire and Allen Smithson also filed reports in addition to Plaintiff.  There appeared to be a concerted effort to evade pursuing the matter and quickly close the cases that were opened.

On or around late 2021 and another time in 2022 Plaintiff contacted the OCDA investigator Peter Montez.  Plaintiff explained his belief that OC Sheriff appeared to have a conflict of interest in the matter given the response to kidnapping on May 22 and Deputy Wilhite's actions/inactions to stop the isolation, etc.  Plaintiff explained the kidnapping and isolation of his mother Lilah in violation of Nevada court and Lilah's will and California law, etc and the stripping of her dogs and Lilah's complaint to California  State Fraud Adjudicator Jackie Shih and that the elements, facts and evidence have always been in support of criminal kidnapping and elder abuse isolation, and with the subrosa sell of Lilah's Henderson home without her knowledge where she still desired to return to live in the Henderson home was also trust fraud and abuse of an elder incompetent trustee.  Investigator Montez told plaintiff to take it civil and refused to allow Plaintiff to submit a criminal complaint with attached evidence and witness statements in support.  Plaintiff's civil rights were violated where Montez ignored a verbal criminal complaint and refused to receive a formal written criminal complaint .. apparently to protect the OCDA's prosecurial team partners, the OC Sheriff, due to their conflicts of interest.

The elder abuse criminals appear to have gotten away with their crimes because those in authority were involved in misconducts and frauds too and if the Billings et al ever get called to account for their crimes it may lead back to the corrupted authorities that violated Plaintiff's and Lilah's civil and other rights.  Plaintiff's life has been destroyed along with Lilah and the Myers family's two beloved rescue comfort dogs with no relief in sight.

## DAMAGES/INJURIES & RELIEF

**Compensatory Damages**

Defendant's violations caused loss of income of at minimum $60,000 per year beginning
January 2019 through the present totalling approximately $220,000, Plus $40,000 in full time
dog care for two dogs (average full time for two dogs) since January 2019 to present.  Total
$260,000

**General Damages**

Defendant's caused extreme financial and life hardship and intentional emotional and mental
distress, including by holding him hostage to a dystopic situation where all his choices were
tragic and harmful.  Defendant's did this  knowing affordhand that Plaintiff already suffered
from a court and ADAAA 2008 C-PTSD psycho/legal abuse disability.  They also repeatedly
smeared, bullied, harrassed, and gaslite Plaintiff victim in such an "unconcionably cruel" way
(according to Cal attorney witness in good  standing via text) to advance their fraud conspiracy
and defeat Plaintiff's attempts to stop their violations.  Plaintiff's quality of life was destroyed,
he ws deprived of his right to peacefully grieve his father's death, and defendant's
actions/inactions resulted in Plaintiff being wrongfully isolated and alienated from his beloved
elderly mother with whom he had a good long standing relationship, his family and also church
friends through no fault of Plaintiff. **Requested General Damages  are $80,000,000.**

**Punitive Damages**

Defendant's conspired to abuse legal process by fraudulently filing perjuruos and manifestly
false statements with the Nevada guardianship court and taking a good faith appeal of a false
DUI conviction procured by fraud in California into the Contempt of Court hearing to endeavor
to prejudice the Mormon judge against Plaintiff while seeking to frivolously declare Plaintiff a
vexatious litigant to protect not only the Nevada fraud conspirators but  also the Orange County
color of law conspirators by baiting Judge Potter to directly abuse  his judical authority to
conspire across state  lines to exonerate the Orange County conspirators.  Defendant's knew
Kamala Harris was involve**d** in sa color of law crime lasb fraud cover up in Orange County
with over 100,000 wrongfully convicted persons and  that it was  Plaintiff's case and legal
efforts that surfaced the OC Sheriff's Internal Affairs and personell files of a corrupt forensic
lab analyst and that  Judge Potter like defendant's were part of Harry Reid's network in Nevada
and that Kamala Harris was candidate for U.S. Senate in Califronia in 2016 because of Harris'
role in the crime elab fraud cover up by way of belated malicious prosecution in Orange
County, Ca.  Defendant Reeve's hired at ACA of Henderson at the behest of Harry Reid
commenced the assaults on Plaintiff, his mothe and the Myers Family Trust during Reid's full
scale backing and promotion of Kamala Harris for President of the United States from
Henderson Nevada is not coincidental  as Reeve promised to protect Plaintiff and his now
deceased father while in his jurisdiction but upon Plaintiff's father's death betrayed Darrold and

Plaintiff and the Myers Family not only for personal family advantage but also to help oppress, embroil and suppress Plaintiff from usng his 2019 founded Blue Water Christian Ministries (free church) to publically expose Kamala Harris and the corrupt judiciary in OC hat failed to backstop her and her co-conspirators fraud and corruption that resulted in Plaintiff's false conviction.

While Judge Potter chose not to go so far as to conspire to indirectly protect Kamala Harris he did whitewash Plaintiff's mother's kidnapping to protect the Mormon church and his fellow Mormon's from Covid 19 and fraud lawsuits, etc and by so doing he thwarted plaintiff's capaciltiy to timely exercising his legal rights in both the OC fraud conspiracy matter and the Nevada fraud conspiracy matter.  Plaintiff suffered from C-PTSD psycho legal abuse or LAS (Legal Abuse Syndrome) when the frauds and violations commenced in Henderson Nevada in late 2018.  Due to debilitation  Plaintiff has not  been able to represent himself pro se in any court proceeding due to the debilitative effects of the defendant's misconduct and violation. The California conspiracy fraud case matter was worth $200,000,000 piracy in Orange County California  that was and is still worth at least 200,000,000 according to Silverstone Entertainment and their partners lawfirm and they sought Plaiitiff's story, legal case and U.S. Senate candiacy management rights in 2016,  Plaintiff now has perjurous libel on the Nevada court record that is of public knowledge as the filings were published online by defendant's in a subrosa manner.  Defendant's endeavored to destroy  any and all future political office opportunities.  Therefore, given the unconscionably cruel and insidious effort to conspire to oppress, harm and debilitate plaintiff to try to induce Judge William Potter in Nevada to maliciously and fraudulently name Plaintiff as a vexatious litigant related to his good faith appeal for a false DUI conviction procured by frauds in Orange County and this present fraud conspiracy which has irreparably harmed Plaintiff's efforts regarding the former case and Plaintiff's libelous injury **punitive damages are requested at one billion dollars**.